UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JACQUELINE E. S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00071-RLY-MKK |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Jacqueline E. S. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d).

On July 6, 2023, United States District Judge Richard L. Young entered an Order referring this matter to the undersigned for a report and recommendation regarding the appropriate disposition pursuant to 28 U.S.C. § 636. (Dkt. 14). For the reasons set forth below, the undersigned recommends that the Commissioner's decision denying the Plaintiff benefits be **REVERSED** and **REMANDED** for further proceedings.

## I.   PROCEDURAL HISTORY

On or about October 16, 2020, Jacqueline protectively filed an application for Title II DIB. (Dkt. 8-5 at 2-6, R. 185-89). Jacqueline's application alleged disability resulting from a variety of conditions, including carpal tunnel syndrome, diabetes,

obesity, COVID-19, brain meningioma, peripheral neuropathy, vision issues, sleep apnea, arthritis, high cholesterol, asthma, carotid artery blockage, hypertension, and a left knee meniscus tear. (Dkt. 8-6 at 3, R. 199). The Social Security Administration ("SSA") denied Jacqueline's claim initially on March 5, 2021, (Dkt. 8-4 at 8-16, R. 84-92), and on reconsideration on June 22, 2021, (*id.* at 20-23, R. 96-99). On June 29, 2021, Jacqueline filed a written request for a hearing, which was granted. (*Id.* at 47, R. 123).

On March 25, 2022, Administrative Law Judge ("ALJ") Kevin Walker conducted a hearing where Jacqueline, her counsel, and vocational expert Cheryl Mosley all appeared telephonically. (Dkt. 8-2 at 17, R. 16). On April 7, 2022, the ALJ issued an unfavorable decision finding that Jacqueline was not disabled. (*Id.* at 17-28, R. 16-27). Jacqueline appealed the ALJ's decision, and on November 8, 2022, the Appeals Council denied Jacqueline's request for review, making the ALJ's decision final. (*Id.* at 2-5, R. 1-4). Jacqueline now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments

must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a)[1]. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves h[er] unable to perform h[er] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. "If a claimant satisfies steps one and two, but not three, then [s]he must satisfy step four." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.*; *see also* 20 C.F.R. § 404.1520. A negative answer at any point, other than step three,

---

[1] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act, such as the one cited here that is applicable to disability insurance benefits. Because the statutory references for disability insurance benefits and supplemental security income claims are substantially similar, the undersigned will reference them interchangeably throughout this opinion.

terminates the inquiry and leads to a determination that the claimant is not disabled.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record, *id.* at 1001, and "may not dismiss a line of evidence contrary to the ruling," *Villano*, 556 F.3d at 563. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant—in light of her age, education, job experience, and RFC to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)-(g).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence and free of legal error. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020); *Dixon v. Massanari,* 270 F.3d 1171, 1176

(7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citations omitted); *see also Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Jacqueline is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence and free of legal error. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). "Nevertheless, [the Court must] conduct a 'critical review of the evidence' before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v.*

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citation omitted); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III.  BACKGROUND

### A.  Factual Background

Jacqueline was 51 years old on the alleged onset date of September 9, 2020. (Dkt. 8-5 at 2, R. 185). She has an Associate's degree. (Dkt. 8-6 at 4, R. 200). She has past relevant work history as an apartment manager, data entry clerk, administrative assistant, and customer service representative. (Dkt. 8-2 at 26-27, R. 25-26; Dkt. 8-6 at 18, R. 214).

### B.  ALJ Decision

In determining whether Jacqueline qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Jacqueline was not disabled. (Dkt. 8-2 at 17-28, R. 16-27). At Step One, the ALJ found that Jacqueline had not engaged in substantial

gainful activity between the alleged onset date of September 9, 2020, and her date last insured, December 31, 2020. (*Id.* at 19, R. 18).

At Step Two, the ALJ found that Jacqueline had severe impairments of degenerative disc disease, carpal tunnel syndrome, diabetes, and obesity. (*Id.*). The ALJ also found Jacqueline to have the following non-severe impairments: COVID-19, brain meningioma, peripheral neuropathy, cataracts, obstructive sleep apnea, arthritis, GERD, high cholesterol, asthma, carotid artery mild blockage, hypertension, and left knee meniscus tear. (*Id.* at 19-20, R. 18-19). The ALJ also concluded that Jacqueline had non-severe mental impairments of anxiety, depression, and bipolar disorder. (*Id.* at 20, R. 19).

At Step Three, the ALJ found that Jacqueline's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Dkt. 8-2 at 21-24, R. 20-23). As to the "paragraph B" criteria, the ALJ found Jacqueline had "no more than mild limitation[s]" in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (*Id.* at 20, R. 19).

After Step Three but before Step Four, the ALJ found that Jacqueline had the RFC to perform sedentary[2] work with the following limitations: "occasionally climbing of ramps and stairs; never climbing of climbing ladders, ropes, or scaffolds;

---

[2] Sedentary work requires an individual to stand or walk up 2 hours per day, sit 6 hours per day, and lift up to 10 pounds. 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185, at *3; SSR 83-10, 1983 WL 31251, at *5-6.

no exposure to unprotected heights or hazardous machinery; requires a cane to ambulate; stand or walk for five minutes per hour." (*Id.* at 24, R. 23).

At Step Four, the ALJ concluded that Jacqueline was able to perform her past relevant work as a customer service representative and data entry clerk, (*id.* at 26-27, R. 25-26), and thus did not analyze her claim under Step Five, (*id.* at 19, R. 18). The ALJ then concluded that Jacqueline was not disabled. (*Id.* at 27-28, R. 26-27).

## IV.  ANALYSIS

Jacqueline presents several arguments. (Dkt. 11 at 1-2). First, she argues that the RFC analysis is "unsupported" and fails to account for her impairments. (*Id.* at 8-19). Second, she critiques the ALJ's failure to include handling and fingering restrictions. (*Id.* at 19-20). Third, she argues that the ALJ does not explain the RFC's lack of mental health restrictions. (*Id.* at 20-24). And, fourth, Jacqueline argues that the ALJ's subjective symptom analysis was flawed. (*Id.* at 24-28). Because the undersigned recommends remand on the grounds of a flawed RFC analysis, the Court declines to address the subjective symptom analysis argument.

### A.    Evidentiary Support for RFC

In her attack on the RFC, Jacqueline argues that the ALJ based his opinion on his own impermissible interpretation of the medical evidence. (Dkt. 11 at 8-19; Dkt. 15 at 7-12). The ALJ committed legal error by determining that "normal exam findings . . . outweighed the abnormal findings . . . and justified the [s]edentary

RFC," she maintains. (Dkt. 11 at 9; *see also id.* ("*no medical source* had the benefit of reviewing the [] imaging and exam findings . . . to determine the impact on her physical functioning") (emphasis in original)). The Commissioner responds that the ALJ did not exercise any improper medical judgment or "impermissibly 'interpret'" the treatment records. (Dkt. 13 at 8). Moreover, the Commissioner argues, the ALJ determines the RFC based on all relevant medical evidence, rather than the opinion of any particular doctor. (*Id.* at 9). The Commissioner further submits that Jacqueline, who carried the burden at the hearing stage, "failed to produce evidence of her functioning during the relevant period." (*Id.* at 8-9). Jacqueline responds that she presented a variety of evidence (beyond objective evidence) that the ALJ was obliged, but failed, to consider, (Dkt. 15 at 3, 7). Records from after her date last insured ("DLI") should be considered, she argues, as relevant to her condition during the applicable time period. (*Id.* at 10-11).

Jacqueline filed her application for DIB benefits in October 2020, and her claim was initially reviewed by state agency reviewing physicians, Dr. J.V. Corcoran and Dr. J. Sands. (Dkt. 8-3 at 2-12, R. 67-77). Both doctors were unable to make a medical determination because there was insufficient evidence in the file. (*Id.*). Neither included RFC restrictions. (*Id.*). In his opinion, the ALJ acknowledged this fact: "[t]he State agency consultants reported there was insufficient evidence to evaluate the severity of the claimant's impairments." (Dkt. 8-2 at 26, R. 25; *see also id.* ("These opinions are not persuasive because they fail to offer specific functional limitations and these sources did not review the additional evidence received at the

hearing level.")). Nevertheless, the ALJ found the record contained sufficient evidence to make an RFC finding that incorporated functional limitations. (*Id.* at 24-26, R. 23-25).

The ALJ's RFC finding is problematic for several reasons. Although the ALJ acknowledged that the state agency physicians found insufficient evidence to determine Jacqueline's RFC, he still proceeded to render a decision rather than requesting more evidence. For example, the ALJ stated that he "considered statements from treating and examining physicians, as well as the state agency physicians, in assessing the claimant's residual functional capacity." (Dkt. 8-2 at 26, R. 25). In the next breath, the ALJ acknowledged that the state agency consultants "fail[ed] to offer specific functional limitations and . . . did not review the additional evidence received at the hearing level." (*Id.*). The ALJ then proceeded to craft RFC limitations based on what could only be his own interpretation of the medical records. This raises concern on review. *See Josette S. v. Kijakazi*, No. 20-CV-4602, 2023 WL 2477536, at *6 (N.D. Ill. Mar. 13, 2023) (had ALJ acknowledged the consultants' findings of insufficient evidence, "she might have realized that *she* had insufficient evidence with which to assess Claimant's case") (emphasis in original).

The ALJ appears to have relied on his own interpretation of the medical evidence when formulating Jacqueline's RFC. For example, the ALJ acknowledges Jacqueline's subjective complaints of "debilitating back pain" and "musculoskeletal pain, including back pain, which was likely exacerbated by her excessive weight." (Dkt. 8-2 at 25, R. 24). He also acknowledged the fact that "exams noted back, knee,

shoulder, and wrist pain" in 2020, as well as complaints of "paresthesia in her hands and feet" and an EMG that "showed a mild chronic right sided S1 radiculopathy." (*Id.*). The ALJ did not give these complaints or exam notes much weight, however, because there were "no significant abnormal findings on physical exams" and "her exams and imaging studies were fairly normal." (*Id.*). But, as the Seventh Circuit has repeatedly held, such determinations are prohibited: "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Shellie C. v. Kijakazi*, No. 1:21-cv-01791-MJD-SEB, 2022 WL 3152052, at *2 (S.D. Ind. Aug. 8, 2022) (quoting *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) and collecting Seventh Circuit cases); *see also id.* ("The reasoning for this rule is sound: without the benefit of an expert opinion, ALJs are simply not qualified to make their own medical determinations."). Similarly, the ALJ asserted that he considered Jacqueline's severe impairments, including degenerative disc disease, carpal tunnel syndrome, and obesity, as well as her asserted "difficulty with prolonged sitting, standing, and walking due to pain," when concluding that he "included appropriate restrictions" in her RFC. (Dkt. 8-2 at 26, R. 25). But the ALJ did not point to any medical evidence to substantiate said restrictions, including his finding that Jacqueline could perform sedentary work (which involves standing or walking 2 hours per day and sitting 6 hours per day) with the additional condition that she could "stand or walk for five minutes per hour," (*id.* at 24, R. 23). While it is true that the ALJ alone determines the RFC, and that "the ALJ need not rely entirely on a particular physician's opinion," it is

also true that "the ALJ may not play doctor and fill in evidentiary medical deficits." *Reinhart v. Berryhill*, No. 14 C 7240, 2017 WL 878450, at \*6 (N.D. Ill. Mar. 6, 2017) (quoting *Miocic v. Astrue*, 890 F. Supp. 2d 1046, 1057 (N.D. Ill. 2012)).

Here, the undersigned is not convinced that the ALJ's RFC is supported by substantial evidence, where the conclusion is based on the ALJ's interpretation of the medical evidence in the record, without any consultative or other expert opinions "as to what that evidence might indicate for Plaintiff's disability." *Stephen R. S. v. Comm'r of Soc. Sec.*, No. 3:20-cv-01160-GCS, 2022 WL 897188, at \*6 (S.D. Ill. Mar. 28, 2022); *see also Josette S.*, 2023 WL 2477536, at \*7 (finding reversible error where state agency consultants' findings indicated there was insufficient evidence to determine whether claimant was disabled, "which would generally trigger the ALJ's duty to seek additional evidence," but ALJ instead "chose to rely on her own interpretation of the medical evidence to determine Claimant's RFC").

### B.    Mental Limitations in RFC

Jacqueline next maintains that because the ALJ found mild limitations in mental functioning, he was required to address and fully account for those limitations in his RFC analysis, which the ALJ failed to do. (Dkt. 11 at 20-24; *see also id.* at 20-21 ("the RFC does not account for the mental impact of Plaintiff's chronic pain, sleep apnea, and sicca syndrome, the combination of which causes fatigue, memory issues, and difficulty concentrating along with medication side effects and contribute to anxiety and depression")). In response, the Commissioner argues that the record "did not support" mental limitations. (Dkt. 13 at 12; *see also*

*id.* at 13 ("Plaintiff's arguments regarding fatigue and side effects, and her speculation about concentration, persistence, or pace limitations, are unsupported.")).

When crafting a claimant's RFC, an ALJ is required to consider every medically determinable impairment and limitation, even those that are not severe in isolation. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014); 20 C.F.R. §§ 404.1545(a)(2), (e). A failure to fully consider the impact of non-severe impairments requires reversal. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). The ALJ must build a logical and accurate bridge between the evidence of those impairments and limitations and his ultimate RFC determination. *Roddy*, 705 F.3d at 636.

In the SSA's five-step disability inquiry, there is no one-to-one relationship between impairment findings found at Step Two and the functional limitations determined in an RFC. *See* 20 C.F.R. § 404.1545(a)(1) ("impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting"); SSR 96-8P, 1996 WL 374184, at *1 (distinguishing between a claimant's "functional limitations and restrictions" and their "medically determinable impairment or combination of impairments"). As the ALJ noted at Step Two, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at [S]teps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at [S]teps 4 and 5 of the

sequential evaluation process requires a more detailed assessment." (Dkt. 8-2 at 21, R. 20). Thus, an ALJ's finding of a mild mental impairment at Step Two may not necessarily equate into a functional limitation in the RFC assessment. *Felts v. Saul*, 797 F. App'x 266, 268-70 (7th Cir. 2019); *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013); *Carter v. Colvin*, No. 1:15-cv-1595-SEB-TAB, 2016 WL 4471661, at *4 (S.D. Ind. July 29, 2016), *R. & R. adopted*, 2016 WL 4471879 (S.D. Ind. Aug. 23, 2016).

As the ALJ's own finding reflects, the record does offer evidence of mental limitation. (Dkt. 8-2 at 20, R. 19). At the hearing, Jacqueline testified that she has "a lot of irritability and anxiety." (*Id.* at 62, R. 61; *see also id.* ("I get very anxious or angry, emotional")). She further testified that she is "not alert to know like how to do certain things or memory." (*Id.*). Jacqueline told the ALJ that she was on a lot of medications and she "can't recall or how to write things." (*Id.*). Further, the record submitted to the ALJ contains evidence that Jacqueline struggles with memory function. She needs reminders to take medication, an assertion which her husband and son seconded in their third-party function reports. (Dkt. 8-6 at 28, 34-41, 67-74; R. 224, 230-37, 263-70). The third-party function reports also state that Jacqueline has memory loss, a hard time focusing, and difficulties with completing tasks, concentration, understanding, and following instructions. (*Id.* at 34-41, 67-74; R. 230-37, 263-70).

Presumably it was because of this evidence that, at Step Two, the ALJ identified mild limitations[3] in the areas of understanding, remembering, or applying information; interacting with others; concentration, persistence, and maintaining pace; and adapting or managing herself. (Dkt. 8-2 at 20-21, R. 19-20). As noted above, the ALJ acknowledged that the mild limitations identified in the "paragraph B" criteria were not an RFC assessment and required later, more detailed findings at Step Four. (*Id*.). The ALJ's later RFC assessment, however, is silent on Jacqueline's mild limitations despite the record evidence and his own findings. (*Id*. at 24-26, R. 23-25). Nor does the ALJ discuss or include off-task time in the RFC analysis, (*id*.), although he did inquire of the VE regarding the impact of off-task time and absences, (*id*. at 65-66, R. 64-65).

This silence is problematic because the ALJ failed to fulfill his duty to connect the evidence to the limitations (or lack thereof) that he imposed, and the Commissioner's argument that Jacqueline failed to support her claimed limitations is unavailing. Jacqueline's testimony and the third-party function reports are evidence that the ALJ must consider. *See Kelli M. v. Saul*, No. 1:20-cv-01731-DLP-JRS, 2021 WL 4236802, at *4 (S.D. Ind. Sept. 17, 2021) ("When crafting a claimant's mental RFC, 'the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe.'") (quoting *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009)). Now, it may be that the ALJ did consider

---

[3] The ALJ concluded that the limitations at issue here were "no more than mild." (Dkt. 8-2 at 20, R. 19). For the purposes of the present analysis and lacking any further distinction made by the ALJ, the undersigned will consider these findings to equate to findings of "mild" limitations.

her testimony and the record and may well have decided after reviewing the evidence that no mental limitations were warranted. However, even if the ALJ decided no mental limitations were warranted, he was required to explain why. *Kelli M.*, 2021 WL 4236802, at *7; *see also Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) ("[W]e cannot uphold an administrative determination that failed to explain the outcome adequately."); *Passig v. Colvin*, 224 F. Supp. 3d 672, 682 (S.D. Ill. 2016) ("These cases make it clear that if a claimant is found to have limitations in maintaining concentration, persistence and pace, those limitations must be spelled out in the RFC assessment and in the hypothetical question posed to the VE."). This is especially true[4] when one considers that the ALJ's hypothetical to the VE did not account for the mild limitations he found when considering the "paragraph B" criteria, (Dkt. 8-2 at 20, 64-66; R. 19, 63-65). *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) ("In this circuit, 'both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record.'") (quoting *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)).

A review of the records in this matter shows that the Commissioner's argument that Jacqueline failed to produce records of any mental limitations falls

---

[4] This conclusion is reinforced by the fact that chronic pain can contribute to problems with attention and concentration. *Holland v. Comm'r of Social Security*, 195 F. Supp. 3d 1011, 1020-21 (N.D. Ind. 2016); *see also Copeland v. Astrue*, 776 F.Supp.2d 828, 845 (N.D. Ind. 2011) (ordering remand where the ALJ did not fully apprise VE of claimant's concentration deficiencies that resulted from her mental health function and chronic pain). Although the ALJ's decision makes clear that he credited Jacqueline's complaints of chronic pain to some extent, even if not completely, (*see* Dkt. 8-2 at 25, R. 24 ("I conclude that musculoskeletal pain would have precluded the ambulation and exertion required in work above the sedentary level of exertion.")), he neglected to address its potential aggravation of Jacqueline's "paragraph B" limitations.

flat. (Dkt. 13 at 12-13). The record before the ALJ shows a depression diagnosis and reports of worsening memory and concentration, irritability, anxiety, and impatience issues during the applicable time period. (Dkt. 8-7 at 9, 29, 210, 219, 248, 267, 294, 300-301; R. 318, 338, 519, 528, 557, 576, 603, 609-10). Additionally, post-DLI records tend to corroborate Jacqueline's mental health limitations. These later-in-time medical records indicate that Jacqueline was undergoing mental health treatment and corroborated her testimony that she was experiencing side effects from current medication that could have affected her ability to work (specifically, issues related to memory and anxiety/anger), (Dkt. 8-2 at 55-56, 62; R. 54-55, 61). And, as explained *infra*, the ALJ must consider those post-DLI records in his RFC analysis and explain why he rejected them or found them unpersuasive.

Nor did the ALJ adequately represent Jacqueline's mild limitations to the VE. In his questioning and hypotheticals, the ALJ failed to ask whether there was relevant work available for Jacqueline if she was limited by mental impairments in the type of tasks she could perform. "[T]he RFC and hypotheticals 'must account for *both* the complexity of the tasks and the claimant's ability to stick with a task over a sustained period.'" *Holland*, 195 F. Supp. 3d at 1020 (emphasis in original) (quoting *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014)). The only questioning posed to the VE regarding complexity of tasks came from Jacqueline's attorney, with an answer decidedly in the negative:

> Attorney:    If the claimant was limited to simple and routine and repetitive tasks could that person do claimant's past relevant work?

VE:        No.

(Dkt. 8-2 at 66, R. 65). The ALJ needed to pursue this line of inquiry or explain his decision to not do so.[5] *See Powell v. Kijakazi*, No. 21-cv-01160-JES-JEH, 2023 WL 2653358, at *9 (C.D. Ill. Mar. 27, 2023) ("To the extent the ALJ determined [claimant's] 'mild' limitations did not necessitate accommodation in his RFC, the ALJ was required to sufficiently articulate *how* and *why* he made that determination.") (emphasis in original)).

Again, the ALJ might not have considered Jacqueline's mental limitations warranted any restrictions. But, as explained above, he had an obligation to explain why no restrictions were necessary. Having identified the issue in his "paragraph B" analysis, the ALJ was obligated to finish the conversation at the RFC stage. He did not. As such, the undersigned's confidence that the ALJ's RFC analysis is supported by substantial evidence is further undermined, and she recommends remanding this matter for further consideration.[6]

---

[5] Similarly, when the ALJ asked the VE about the impact of 15% off-task time and unscheduled absences of two days a month, the VE responded that such limitations would "be work preclusive for all employment at all exertional levels." (Dkt. 8-2 at 65-66, R. 64-65). This response demonstrates the importance of the ALJ addressing this issue in his decision, which he did not. The Commissioner argues that Jacqueline fails to cite treatment records which would support off-task time, (Dkt. 13 at 14), but that argument is unavailing. The ALJ himself found a mild limitation in Jacqueline's ability to concentrate, persist, or maintain pace, (Dkt. 8-2 at 20, R. 19), her function report stated that she needed to "lay down for 1 to 1 ½ hours per day," (Dkt. 8-6 at 27, R. 223), she found it "hard to stay focused," (*id*. at 29, R. 225; *see also id*. at 31, R. 227 (can pay attention for "2 or 3 minutes")), and she testified regarding her anxiety and irritability. (Dkt. 8-2 at 62, R. 61). The ALJ was required to, at minimum, support his decision not to include any mental limitations in the RFC. *Powell*, 2023 WL 2653358, at *10.

[6] The Court does not find the ALJ's error was harmless, as said doctrine only applies when the court can predict "with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). Here, as noted, Jacqueline identified potential limitations that the ALJ should have considered (*i.e.*, off-task time) and said

## C.      Handling/Fingering and Post-DLI records

Plaintiff also argues that the ALJ's failure to discuss handling and fingering limitations in the RFC necessitates remand. (Dkt. 11 at 19-20). The Commissioner responds that the records on which Plaintiff relies are not from the relevant time period and do not "provide a retrospective assessment of her impairments." (Dkt. 13 at 11). The Commissioner maintains that reports of hand issues several months after Jacqueline's date last insured do not show that she was limited during the relevant time period. (*Id.* at 12). Plaintiff replies that post-DLI records need to be included in the ALJ's assessment because they "*tend to corroborate* Plaintiff's reports of pain and numbness in her hands and 'pinch[ing]' when using them." (Dkt. 15 at 12 (emphasis in original)).

"An ALJ must consider evidence even if it post-dates the date last insured." *Gross v. Comm'r of Social Security*, No. 3:20-CV-351 JD, 2021 WL 2821172, at *5 (N.D. Ind. Jul. 7, 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010)). So too, medical records subsequent to the date last insured, and a retrospective diagnosis, may be considered if they are "corroborated by evidence contemporaneous with the eligible period." *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998); *see also Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) ("Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment.") (quoting *Newell v. Comm'r of Social*

---

limitations could have been vital to Jacqueline's case, given the VE's testimony regarding the impact of off-task time.

*Security*, 347 F.3d 541, 547 (3d Cir. 2003)); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period."). In addition, "[a] treating physician's opinion that is consistent with the record is generally entitled to 'controlling weight,'" and an "ALJ who chooses to reject a treating physician's opinion must provide a sound explanation for the rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); *see also* 20 C.F.R. § 404.1527(c)(2). A reviewing court will find error if the ALJ fails to adequately explain why he rejected post-DLI records and opinions. *Freismuth v. Astrue*, 920 F. Supp. 2d 943, 951 (E.D. Wisc. 2013).

Here, the ALJ explicitly focused on Jacqueline's carpal tunnel complaints solely for the period "at issue." (Dkt. 8-2 at 26, R. 25 ("She also has a history of carpal tunnel syndrome and surgery, but her EMG did not show evidence for carpal tunnel syndrome and she did not make any significant complaints about it during the period at issue.")). In doing so, he erred. Based on Jacqueline's post-DLI records, the ALJ should have considered whether handling and/or fingering restrictions should have been included in Jacqueline's RFC. If not, he should have indicated whether he considered the relevant medical records and why he rejected them or otherwise found them unpersuasive. The ALJ found that, through the date last insured, one of Jacqueline's *severe* impairments was carpal tunnel syndrome. (Dkt. 8-2 at 19, R. 18). At the hearing, Jacqueline testified that she has had carpal tunnel issues in both of her hands since 2005. (Dkt. 8-2 at 51, R. 50). She elaborated that

she has difficulty lifting "something heavy, especially a gallon of milk" and that doing so makes her feel pinching. (*Id.*; *see also* Dkt. 8-2 at 25, R. 24 ("[h]er exams noted . . . wrist pain")). After the hearing, Jacqueline submitted post-DLI records evidencing "tenderness and edema" in her hands. (Dkt. 8-10 at 454, 474-79, 494, 513, 518-19, 542; R. 1626, 1646-51, 1666, 1685, 1690-91, 1714). These post-DLI medical records tend to corroborate Jacqueline's claimed symptoms and conditions during the relevant period. As such, the ALJ was required to consider them. *See Raymond M. v. Kijakazi*, No. 21 cv 0382, 2022 WL 3700826, at *3 (N.D. Ill. Aug. 26, 2022) ("if the ALJ opted not to retain a medical expert to estimate the gravity of Plaintiff's condition prior to the DLI, she was required to consider all relevant evidence, including post-DLI evidence, in determining Plaintiff's limitations during the relevant time period"). It may be that, after consideration, the ALJ would have reached the same conclusion, *i.e.*, that no handling and/or fingering restrictions were necessary to include in the RFC despite a finding of carpel tunnel syndrome as a severe impairment. But this Court has no way of telling, for the ALJ's opinion does not discuss this potential limitation or Jacqueline's post-DLI records. The undersigned suggests that this omission is error and requires remand.

## V.   CONCLUSION

In summary, the ALJ's cursory treatment of the various issues discussed above undermines the support for the RFC. For the reasons detailed herein, the undersigned recommends that the ALJ's decision denying Plaintiff benefits be **REVERSED** and **REMANDED** for further proceedings.

Any objections to the Magistrate Judge's Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO RECOMMENDED.

Date: 01/16/2024

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email.